## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| JANE DOE 1, JANE DOE 2, and JOHN DOE, individually and on behalf of all similarly situated persons,<br><br>     Plaintiffs,<br><br>  v.<br><br>FLORIDA HEALTH SCIENCES CENTER, INC. D/B/A TAMPA GENERAL HOSPITAL, a Florida Non-Profit Corporation,<br><br>     Defendant. | Case No.:<br><br>**DEFENDANT'S NOTICE OF REMOVAL**<br><br>[Filed concurrently with Civil Cover Sheet and Certificate of Interested Persons and Corporate Disclosure Statements]<br><br>Action Filed:    August 4, 2023<br>Complaint Served: August 15, 2023 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital ("Defendant" or "TGH"), hereby removes the action filed by Plaintiffs Jane Doe 1, Jane Doe 2, and John Doe ("Plaintiffs"), individually and on behalf of all others similarly situated, from the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 23-CA-014344, to the United States District Court for the Middle District of Florida. In support of removal, TGH states as follows:

## JURISDICTION AND VENUE

1.        This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332.  Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2.        This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed.  28 U.S.C. §§ 1441(a), 1446(a).

## BACKGROUND AND TIMELINESS OF REMOVAL

3.        On August 4, 2023, Plaintiffs, individually and on behalf of all others similarly situated, filed a Class Action Complaint (the "Complaint") against TGH in Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 23-CA-014344 (the "State Court Action").  Plaintiffs filed the Complaint as a putative class action.

4.        On August 15, 2023, Plaintiffs served TGH with copies of the Summons and Complaint via process server.  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of documents received in the State Court Action by TGH are attached hereto as exhibits.  Specifically, attached to this Notice of Removal are true and correct copies of (1) the operative Complaint (**Exhibit A**); (2) the docket in the State Court Action (**Exhibit B**); and (3) service documents (i.e., summons and proof

of service) and motions concerning appointment of leadership and consolidation filed in the State Court Action (**Exhibit C**).

5.　　　　No other pleadings or substantive filings  (i.e., answers, state court orders terminating or dismissing parties, responses, etc.) have been filed in the State Court Action.

6.　　　　This removal is timely because TGH filed this removal within 30 days of being served with the Complaint.  *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when the defendant is served).

## <u>CAFA JURISDICTION</u>

7.　　　　<u>Basis of Original Jurisdiction</u>.  This Court has original jurisdiction over this action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is a citizen of a different state than the state of citizenship of the defendant.  28 U.S.C. § 1332(d)(1)-(2)(A); *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021).

3

8.      As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), TGH may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a class action; (2) the putative class includes more than one hundred (100) members; (3) "minimal diversity" exists, *i.e.*, at least one member of the putative class is a citizen of a state different from that of Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007).

## THE ACTION IS PLED AS A CLASS ACTION

9.      CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure ***or similar State statute*** or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B) (emphasis added); *Lowery*, 483 F.3d at 1199 n. 35.

10.      Plaintiffs bring this action as a "class action" and seek class certification pursuant to Florida Rule of Civil Procedure 1.220.  [Compl., ¶ 87 ("Plaintiffs bring this suit on behalf of themselves and a class of similarly situated individuals under Florida Rule of Civil Procedure 1.220 . . .").]  Because Florida's Class Action rule, Florida Rule of Civil Procedure 1.220, "is not only 'similar' to, but is based on, Rule 23," *Coquina Crossing Homeowners Assoc., Inc. v. MHC*

*Operating Ltd. P'ship*, Case No. 3:21-cv-84-MMH-LLL, 2022 WL 843582, at *7 (M.D. Fla. Mar. 22, 2022), the first CAFA element is satisfied.

## THE PUTATIVE CLASS INCLUDES
## AT LEAST ONE HUNDRED (100) MEMBERS

11.     Plaintiffs allege that, "[o]n May 12, 2023, TGH—one of the largest hospitals and[sic] the Tampa Bay Area and in the state of Florida—lost control over its patients' highly sensitive personal information in a data breach perpetrated by cybercriminals [on TGH's computer systems]," (the "Data Incident"). [Compl., ¶ 1.] Plaintiffs further allege the Data Incident resulted in the alleged compromise of Personal Information[1] of approximately 1.2 million individuals, including Plaintiffs. [*Id.* at ¶¶ 2–5; 9.] Plaintiffs further allege that TGH acted unlawfully as "evidenced by its failure to prevent, detect, or stop the Data [Incident] before criminals gained access to its system and stole the Personal Information belonging to approximately 1.2 million patients." [*Id.* at ¶ 8.]

12.     Based on these allegations, Plaintiffs assert eight causes of action against TGH: (1) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*; (2) negligence; (3) breach of express contract; (4) breach of implied contact in fact; (5) invasion of privacy (electronic

---

[1] Plaintiffs define "Personal Information" as protected health information, including names, addresses, phone numbers, dates of birth, Social Security numbers, health information, medical records numbers, patient account numbers, dates of service, and limited treatment information. [Compl., ¶ 2.]

intrusion); (6) unjust enrichment; (7) breach of confidence; and (8) breach of fiduciary duty.  [*See generally,* Compl.]

13.     Furthermore, Plaintiffs purport to bring these eight causes of action on behalf of themselves and class defined as "All persons impacted by the Data [Incident], including all who were sent notice of the Data [Incident].  Excluded from the class are all employees, officers, and directors of Defendant, as well as any judges presiding over this matter and court personal[sic] assigned to this case." [*Id.* at ¶ 87.]

14.     Further, Plaintiffs allege that approximately 1.2 million people were impacted in the Data Incident.  [*Id.* at ¶ 88 ("The exact number of identities of Class Members are unknown at this time, but are reported to be at least the 1.2 million to whom TGH sent the Notice."); *see also id.* at ¶ 2.]

15.     To date, TGH has mailed notification to approximately 1,314,425 people, the vast majority of whom reside in the United States.

16.     Based on the above, the number of putative class members exceeds the statutorily-required minimum of 100 individuals.

## MINIMAL DIVERSITY OF CITIZENSHIP EXISTS

17.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), the "district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant."  *See also Day v. Sarasota Drs. Hosp., Inc.*, No. 8:19-CV-1522-T-33TGW, 2020 WL 5758003, at *2 (M.D. Fla.

Sept. 28, 2020) (stating that minimal diversity is met if "a single putative class member [i]s a citizen of a state other than [that of defendant] at the time of removal").

18.     <u>Defendant's Citizenship</u>.   Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *RVRoof.com, Inc. v. Ariz. RV Specialist, LLC*, Case No. 3:19-cv-674-J-34MCR, 2019 WL 2452824, at *2 (M.D. Fla. June 12, 2019) (quoting 28 U.S.C. § 1332(c)(1)). "A corporation's principal place of business is 'the place where the corporation's high level officers direct, control, and coordinate the corporation's activities,'" *i.e.*, the corporation's "nerve center."  *Cohen v. Burlington*, No. 22-13222, 2023 WL 4364499, at *3 n. 2 (11th Cir. July 6, 2023) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010)); *see also Tavares v. Pelican Int'l, Inc.*, Case No. 3:22-cv-554-MMH-MCR, 2022 WL 1619172, at *2 (M.D. Fla. May 23, 2022).   "In practice, this normally is 'the place where the corporation maintains its headquarters[.]'" *Tavares*, 2022 WL 1619172, at *2 (quoting *Hertz*, 559 U.S. at 93); *see id.* ("A corporation's headquarters is normally . . . its principal place of business.").

19.     As alleged in the Complaint, TGH is a private corporation that is "headquartered and does business in [Hillsborough] county."  [Compl., ¶ 17; *id.* at ¶¶ 1 ("TGH [is] one of the largest hospitals [in] the Tampa Bay Area and in the state of Florida.") & 100 ("TGH is headquartered and managed [under Florida law].").]

Accordingly, pursuant to *Hertz*'s nerve center test, TGH has its principal place of business, *i.e.*, its headquarters, in Florida.  Specifically, TGH's headquarters are located at 1 Tampa General Circle, Tampa, Florida 33606.[2]  Further, TGH is organized under the laws of Florida.  Accordingly TGH is a citizen of Florida for purposes of CAFA.

20.     <u>Plaintiffs' and the Putative Class's Citizenship</u>.  For diversity purposes, an individual is a "citizen" of the state in which he or she is domiciled. *Arnold v. Leavy Bros. Moving & Storage, Inc.*, Case No. 3:22-cv-427-BJD-JBT, 2023 WL 2347488, at *1 (M.D. Fla. Mar. 3, 2023) (citing *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013)).  "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.'"  *Smith*, 991 F.3d at 1149 (quoting *McCormick v. Aderholt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002)).  Said differently, "domicile (or citizenship) consists of two elements: residency in a state and intent to remain in that state."  *Id.*  "Courts look to various factors in determining a person's intent to remain in a state, including: the location of real and personal property, business ownership, employment records, the location of bank

---

[2] *See* Hospital Contact Information, https://www.tgh.org/about-tgh/contact-us (last visited August 13, 2023).

accounts, payment of taxes, voter registration, vehicle registration, driver's license, membership in local organizations, and sworn statements of intent." *Id.*

21.     Here, all Plaintiffs allege that they were either patients of TGH and received notice from TGH of the Data Incident, [*see* Compl., ¶¶ 40 & 41], or that their deceased family member was a former patient of TGH, [*id.* at ¶¶ 50 & 51 (stating that "Jane Doe 2's now-deceased mother was a patient of TGH" and although "Jane Doe 2's mother passed away in 2015 . . . Jane Doe 2 received TGH's Notice [of the Data Incident] despite her mother's relationship with TGH ending long ago")].  None of the Plaintiffs states where he or she resides, where he or she is domiciled, nor where he or she intends to permanently remain.  Thus, absent allegations of citizenship, it is unclear whether Plaintiffs are citizens of the state of Florida.  *See Smith*, 991 F.3d at 1149 ("Residency is necessary, but insufficient, to establish citizenship in a state.") (citing *Travaglio*, 735 F.3d at 1269); *see also Telari Mgmt. FZC, LLC v. Vasilyev*, CASE NO: 23-80640-CV-MIDDLEBROOKS, 2023 WL 3778256, at *1 (S.D. Fla. Apr. 20, 2023) ("Domicile is not synonymous with residence; one may temporarily reside in one location, yet retain domicile in a previous residence.") (quoting *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1341–42 (11th Cir. 2011)).  However, as explained in more detail below, even assuming Plaintiffs are citizens of Florida for purposes of CAFA (which may or may not be the case if, as they alleged in the Complaint, they are or were TGH patients

or their family member was a former TGH patient), the putative class Plaintiffs seek to represent is broad and expansive enough geographically to make a reasonable inference that at least one putative class member is a citizen of a state other than Florida. For example, TGH sent notifications of the Data Incident to addresses of individuals in all 50 states and the District of Columbia. And, of course, while "residency does not equate to citizenship," *Smith*, 991 F.3d at 1149 ("Residency is necessary, but insufficient, to establish citizenship in a state.") (citing *Travaglio*, 735 F.3d at 1269), in this case, where only one putative class member must reside and intend to remain in a state other than Florida, it is more likely than not that at least one of the approximately 1,314,425 putative class members to whom TGH mailed notification is a non-Florida citizen.

22.    Accordingly, as established above, "minimal diversity" of citizenship exists pursuant to CAFA because TGH is a citizen of the State of Florida, and it is more likely than not that at least one of the approximately 1,314,425 putative class members is a citizen of a state other than Florida.

23.    <u>No CAFA Exceptions Apply</u>.[3]    Plaintiffs also cannot meet their burden to show, let alone demonstrate, that CAFA's "home state" or "local controversy exception" applies. *See Alvarez v. Loancar*e *LLC*, Case No. 20-21837-

---

[3] TGH only briefly addresses the mandatory exceptions to CAFA jurisdiction and reserves all rights to raise additional or other arguments regarding any CAFA exception.

CIV-ALTONAGA/Goodman, 2021 WL 184547, at *7 (S.D. Fla. Jan. 19, 2021) (citing *Hunter v. City of Montgomery*, 859 F.3d 1329, 1335 (11th Cir. 2017)).

24.    Under the "home state" exception to CAFA, "a district court must 'decline to exercise jurisdiction over class actions in which two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'" *Day*, 2020 WL 5758003, at *5 (citation omitted).   Similarly, the "local controversy exception" requires a district court to "decline to exercise jurisdiction when three requirements are met: (1) greater than two-thirds of the proposed plaintiff class are citizens of the state of filing; (2) at least one 'significant defendant' is a citizen of the state of filing; and (3) the principal injuries were incurred in the state of filing." *Smith*, 991 F.3d at 1155 (citing 28 U.S.C. § 1332(d)(4)(A)(i)).   "Both exceptions have a similar requirement that can only be satisfied if a defendant shares a state of citizenship with two-thirds of the proposed plaintiff classes, and the action was originally filed in that same state." *Alvarez*, 2021 WL 184547, at *6.  The "local controversy exception" also has the added requirement that states that the Court must decline to exercise jurisdiction if, "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other person." *Lowery*, 483 F.3d at 1200 n. 37 (quoting 28 U.S.C. § 1332(d)(4)(A)(ii)).

25.     First, the "local controversy" exception does not apply here because it is not true that "no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other person" in the prior 3-years.  To the contrary, multiple class actions stemming from the same Data Incident and asserting the same or similar causes of action and seeking to represent a nationwide class and Florida subclass were filed in the same state court before Plaintiffs' Complaint, some of which have been removed to this District.  *See DiPierro, et al. v. Fla. Health Scis. Ctr., Inc. d/b/a Tampa Gen. Hosp.*, filed on July 21, 2023 under Case No. 23-CA-013984 (Fla. 13th Jud. Cir., Hillsborough Cty.); removed and now pending under Case No. 8:23-cv-1864-KKM-UAM (M.D. Fla.); *Ramirez v. Fla. Health Scis. Ctr., Inc. d/b/a Tampa Gen. Hosp.*, filed on July 27, 2023 under Case No. 23-CA-014150 (Fla. 13th Jud. Cir., Hillsborough Cty.); removed & now pending under Case No. 8:23-cv-01890-SDM-TGW (M.D. Fla.); *Colon, et al. v. Fla. Health Scis. Ctr., Inc. d/b/a Tampa Gen. Hosp.*, filed on July 21, 2023 under Case No. 23-CA-013991; removed and & now pending under Case No. 8:23-cv-01909-MSS-CPT (M.D. Fla.).  Further, a total of thirteen other class actions (including the actions mentioned above) have been filed stemming from the Data Incident, eleven of which are still pending, which suggests that the "local controversy" exception is inapplicable under the circumstances.  *See Hunter v. City of Montgomery*, Civil Action No. 2:15-653-BJR, 2016 WL 9444333, at *2 (M.D.

Ala. Aug. 11, 2016) (stating that the requirement asking "whether a sufficiently similar case has been filed within the three years immediately preceding this case . . . is meant as a test for whether a controversy is truly localized," and further stating that "if a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that th[e local controversy] exception is intended to address") (citation omitted).

26.     Second, neither CAFA exception applies because with notification letters sent to individuals with addresses in all 50 states, there simply is no way to know who a citizen of any state is without speaking directly to each of those individuals, including the 1,314,425 notified individuals.  *See Smith*, 991 F.3d at 1157 (holding that to prove "citizenship" for the purpose of the local controversy exception, the plaintiff "must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state" and that "[m]ere mental fixing of citizenship is not sufficient.  What is in another man's mind must be determined by what he does as well as by what he says").  This is especially true here, where "citizens of other states may live part of the year in Florida . . . , but maintain a permanent residence elsewhere."  *Id* at 1158.  Further exacerbating this problem here is the nature of the putative class, many of whom may have visited TGH only for a one-off hospital visit while visiting or temporarily residing in Florida.

27.     In short, because at least one putative class member is likely a citizen of a state other than Florida, "minimal diversity" is established pursuant to CAFA, and no evidence exists to suggest any of the exceptions to CAFA apply.

## THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[4]

28.     Where a complaint does not specify the amount of damages sought, as is the case with Plaintiffs' Complaint, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied.  28 U.S.C.A. § 1446(c)(2)(B); *Penton v. Centennial Bank*, Case No. 4:18-cv-450-AW-MAF, 2021 WL 8014675, at *3 (N.D. Fla. July 30, 2021) (citing *Fed. Mut. Ins. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003)).  The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 90 (2014).  "The goal is to determine 'what the controversy is in the case, not how much plaintiffs are ultimately likely to recover as a result of the lawsuit.'"  *Penton*, 2021 WL 8014675, at *3 (quoting *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1045 (11th Cir.

---

[4] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiffs can state a claim or are entitled to damages in any amount. Defendant denies liability, denies Plaintiffs are entitled to recover any amount, and denies that a class can be properly certified in this matter.

2020)).  "Accordingly, dismissal is appropriate only if it 'appears to a legal certainty that the claim is really for less than the jurisdictional amount.'"  *Id.* (quoting *McKinnon Motors, LLC*, 329 F.3d at 807).  Furthermore, in determining the amount in controversy, the claims of all putative class members are aggregated to determine if the amount in controversy is more than $5,000,000, *Topalli v. PetSmart, LLC*, Case No.: 6:22-cv-1670-WWB-EJK, 2023 WL 2928301, at *1 (M.D. Fla. Apr. 13, 2023) (citation omitted), including "'class members' . . . (named or unnamed) who fall within the definition of the *proposed* or certified class,'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citation omitted).

29.     Here, Plaintiffs seek damages, including, but not limited to, "monetary and actual damages and/or restitution, as appropriate, or nominal damages in the alternative"; all costs, experts' fees and attorneys' fees, expenses, and costs of prosecuting the action"; "pre- and post-judgment interest to the extent allowed by law"; "declaratory and injunctive relief"; and "[s]uch other and further relief as the Court may deem just and proper."  [Compl., Prayer for Relief.]

30.     As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

31.     <u>Negligence Claim.</u>  As stated above, Plaintiffs state a claim for negligence.  [Compl., ¶¶ 106–12.]

32.     Plaintiffs allege that TGH "had a duty to exercise reasonable care and protect and secure Plaintiffs' and Class Members Personal Information," including under common law and statute. [*Id.* at ¶ 107.] Plaintiffs further allege that "TGH breached its duty use reasonable care to protect and secure Plaintiffs' and Class Members' Personal Information by employing substandard or non-existent data and cybersecurity protocols" and "by failing to employ industry standard data and cybersecurity measures to gain compliance with those laws, including, but not limited to, proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing." [*Id.* at ¶¶ 108 & 109.] As a result of TGH's alleged negligence, Plaintiffs allege that they have been injured, [*id.* at ¶¶ 111 & 112], including, in the case of Jane Doe 1, by "suffer[ing] identity theft in the form of fraudulent loan and credit card applications that [Plaintiff Jane Doe 1] has never applied for," [*id.* at ¶ 43] and, as applied to all Plaintiffs, by "spend[ing] considerable time and effort monitoring [their] accounts to protect [themselves] from identity theft," [*id.* at ¶¶ 45 & 61], among other damages.

33.     Plaintiffs' Complaint contains no allegations that would support or suggest the amount in damages they or any of the putative class members allegedly sustained as a consequence of TGH's negligence. However, because Plaintiffs seek recovery for damages from being at a "continued increased risk of identity theft and

fraud for years to come" and "[t]he continued increased risk to their Personal Information, which remains in the possession of TGH and is subject to further breaches so long as TGH fails to undertake the appropriate measures to protect the Personal Information in their possession," [*id.* at ¶¶ 63 & 68; *see also id.* at ¶¶ 69 & 70 (stating that Plaintiffs' Personal Information has been stolen and that such information "trades on the black market for years, and criminals frequently post stolen private information openly and directly on various 'dark web' internet websites, making the information publicly available"], one option for assigning a value to these damages is through the cost of credit monitoring.

34.     Three main identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $15.99 to $24.99 per person per month.  For example, LifeLock offers a product, called Norton360 with LifeLock Advantage, which provides 1-Bureau credit monitoring with up to $100,000 in "stolen funds reimbursement" for $15.99 per

month if paid annually.[5]  Similarly, both Equifax[6] and Experian[7] offer products that provide 3-Bureau credit monitoring with up to $1,000,000 in identity theft insurance for $19.95 and $24.99 per month, respectively.   Multiplying just the cost of providing <u>one month</u> of credit-monitoring services at $15.99 (the cheapest of the three products) by the number of putative class members, the amount in controversy for just credit monitoring is approximately $21,017,655.80 (calculated as: 1,314,425 individuals notified, times 1 month, times $15.99 per month).  And multiplying just the cost of providing <u>one month</u> of the 3-bureau credit monitoring by Experian is approximately $32,847,480.80.

35.     Accordingly, Plaintiffs' and the putative class members' potential credit monitoring damages alone far exceed the $5,000,000 CAFA amount-in-

---

[5] *See* https://www.lifelock.com/family-plans/?promocode=BSEM60MBGCBU&om_sem_cid=hho_sem_sy:us:ggl:en:e:br:ll&utm_source=google&utm_medium=cpc&utm_campaign=1584904959&adgroup=66661422904&utm_term=lifelock%2520credit%2520monitoring&targetid=kwd-295997165667&matchtype=e&utm_content=297610135624&network=g&device=c&adp=&testgroup=&pgrid=66661422904&ptaid=kwd-295997165667&gclid=EAIaIQobChMI0v-3-eG28wIVEFpgCh2XSQzTEAAYASABEgLMPPD_BwE&gclsrc=aw.ds (last visited on August 30, 2023).

[6] *See* https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355994880&DS3_KIDS=p50281164756&campaignid=71700000061086345&sakwid=43700050281164756&gclid=EAIaIQobChMIzpzAneG28wIVS9KzCh3vCA_MEAAYASAAEgIjevD_BwE&gclsrc=aw.ds (last visited on August 30, 2023).

[7]*See* https://www.experian.com/protection/compare-identity-theft-products/ (last visited on August 30, 2023).

controversy jurisdictional amount.   Combined with Plaintiffs' other alleged negligence damages, the total amount in controversy is well in excess of $5,000,000.

36.      Breach of Fiduciary Duty Claim.  Plaintiffs also claim that TGH had a "special relationship" whereby "TGH . . . bec[a]me the guardian of Plaintiffs' and Class Members' Personal Information" as well as "a fiduciary, created by its undertaking and guardianship of patient Personal Information."  [Compl., ¶¶ 142–46.]  Plaintiffs further allege that this "duty included the obligation to safeguard Plaintiffs' and Class Members' Personal Information and to timely notify them in the event of a data breach."  [*Id.* at ¶ 143.]

37.      Plaintiffs claim that TGH breached its fiduciary duty to Plaintiffs and the class by, among other things, failing to "properly encrypt and otherwise protect the integrity of the system containing Plaintiffs' and Class Members' protected health information and other Personal Information"; "implement policies and procedures to prevent, detect, contain, and correct security violations"; and "protect against any reasonably-anticipated threats or hazards to the security of integrity of electronic protected health information."  [*Id.* at ¶ 144.]  As a result, Plaintiffs claim that they and class members have suffered or will suffer injury, including, but not limited to:

> (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Personal Information; (iii) out-of-pocket expenses associated with prevention, detection, and recovery from identity theft and/or unauthorized use of their Personal Information; (iv) lost opportunity

costs associated with effort attempting to mitigate the actual and future consequences of the Data [Incident] . . . ; (v) the continued risk to their Personal Information, which remains in TGH's possession and is subject to further unauthorized disclosures so long as TGH fails to undertake appropriate and adequate measures to protect patient Personal Information in their[sic] continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Data [Incident] for the remainder of the lives of Plaintiffs and Class Members.

[*Id.* at ¶ 145.]

38.     Plaintiffs' Complaint contains no allegations that would support or suggest the amount in actual damages to which they or any of member of the Class are allegedly entitled for Defendant's alleged breach of fiduciary duty.  Therefore, Defendant does not include any specific "breach of fiduciary duty" damages in the calculation of the total amount in controversy.  But, as stated above, just one month of Norton360 with LifeLock Advantage for each member of the proposed class would amount to, at a minimum, $21,017,655.80.  Therefore, when these additional alleged damages are combined with the cost of just one month of credit monitoring for the entire class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

39.     <u>Breach of Express and Implied Contract Claims</u>.   Plaintiffs also assert that TGH breached express and implied contracts with Plaintiffs and putative class members.   [*See* Compl., ¶¶ 113–15 (breach of express contract); ¶¶ 116–19 (breach of implied contract in fact).]

40.     First, Plaintiffs claim that "TGH provides medical services to Plaintiffs and Class Members pursuant to the terms of its contracts, which all were a party to, including agreements regarding the handling of their confidential Personal Information in accordance with TGH's policies, practices, and applicable law." [*Id.* at ¶ 114.]  Plaintiffs "are not in possession of these contracts but upon information and belief" believe these contracts are in TGH's possession.  [*Id.*]  As consideration, Plaintiffs claim they "paid money to TGH and/or their insurers for their medical services" and "to securely maintain and store their Personal Information."  [*Id.*]  TGH alleged "violated these contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' Personal Information and by disclosing it for purposes not required or permitted under the contracts." [*Id.*]

41.     Second, Plaintiffs claim that implied contracts were formed with TGH via "their collective conduct, including by Plaintiffs and Class Members paying for medical goods and services from TGH and TGH's performance of and sale of medical goods and services, regarding the handling of their confidential Personal Information in accordance with TGH's policies, practices, and applicable law." [*Id.* at ¶ 117.]  Plaintiffs further claim that TGH breached its implied contracts with Plaintiffs and Class Members "by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' Personal Information and by

disclosing it for purposes not required or permitted under the contracts or agreements." [*Id.* at ¶ 118.]

42.     As a result of TGH's alleged breach of express and implied contracts, Plaintiffs claim they have been injured, "including by paying for data and cybersecurity protection that they did not receive, as well as by incurring the harms and injuries arising from the Data [Incident] now and in the future." [*Id.* at ¶¶ 115 & 119.]

43.     Plaintiffs' Complaint contains no allegations that would support or suggest the amount in actual damages to which they or any of member of the Class are allegedly entitled for Defendant's alleged breach of express of implied contract. Therefore, TGH does not include any specific "breach of express contract" or "breach of implied contract" damages in the calculation of the total amount in controversy.  But, again, just one month of Norton360 with LifeLock Advantage for each member of the proposed class would amount to, at a minimum, $21,017,655.80. Therefore, when these additional alleged damages are combined with the cost of just one month of credit monitoring for the entire class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

44.     <u>Claim for Violation of the Florida Deceptive and Unfair Trade Practice Act.</u>  Plaintiffs claim that TGH has violated the FDUTPA, Fla. Stat. § 501.201 *et seq.*  [Compl., ¶¶ 95–105.]

45.     Specifically, Plaintiffs claim that TGH violated the FDUTPA by "engaging in . . . unfair and deceptive practices," including by "fail[ing] to maintain adequate and reasonable data and cybersecurity protocols for Plaintiffs' and Class Members' Personal Information in violation of state and federal laws and [TGH]'s own privacy practices and policies" and by "fail[ing] to take reasonable measures to destroy or dispose of Personal Information and timely notify its patients of the Data [Incident] in violation of Florida law." [*Id.* at ¶ 101.]  As a result of TGH's violation of the FDUTPA, Plaintiffs claim they and the class have been injured, [*see id.* at ¶ 102], and therefore request damages in the form of injunctive and declaratory relief, actual damages, and attorneys' fees and costs, [*id.* at ¶¶ 103–05].

46.     Plaintiffs' Complaint again contains no allegations that would support or suggest the amount in "damages" they or any member of the Class allegedly sustained as a result of Defendant's alleged violation of the FDUTPA. Therefore, Defendant does not include in the calculation of the total amount in controversy any alleged violation-of-FDUTPA damages.  However, the FDUTPA allows private parties to recover "actual damages, attorney's fees, and court costs," *N. Am. Clearing, Inc. v. Brokerage Comput. Sys., Inc.*, 666 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) (citing Fla. Stat. § 501.211(2)), all relief which Plaintiffs seek. Accordingly, when these damages—permitted and recoverable under law—are combined with the cost of just one month of Norton360 with LifeLock Advantage

credit monitoring for each member of the putative class, in addition to the other damages Plaintiffs claim they and the Class have suffered, the amount in controversy further exceeds CAFA's $5,000,000 threshold. *See, e.g.*, *Shaver v. Ford Motor Co.*, 768 F. Supp. 2d 1235, 1237 (S.D. Fla. 2011) (CAFA amount-in-controversy requirement met and evident on face of plaintiff's complaint when plaintiff asserted FDUTPA claim involving "at least hundreds of thousands of persons").

47.     <u>Total Amount in Controversy</u>.  Based on the discussion above, the amount in controversy based on just one month of Norton360 with LifeLock Advantage credit monitoring for each member of the Class exceeds the $5,000,000 CAFA threshold.   Accordingly, the CAFA amount-in-controversy threshold is satisfied before ever taking into account other forms of compensatory damages, injunctive or declaratory relief, or attorneys' fees, which, as discussed below, add even more to the total amount in controversy.

48.     <u>Prayer for Other Monetary and Injunctive Relief and Other Claims</u>. In addition to the damages discussed above, Plaintiffs also state claims for unjust enrichment, [Compl., ¶¶ 124–29]; breach of confidence, [*id.* at ¶¶ 130–41]; and invasion of privacy (electronic intrusion) [*id.* at ¶¶ 120–23].  Plaintiffs also seek declaratory and injunctive relief requiring Defendant "to assure that the Class has an effective remedy, including enjoining TGH from continuing the unlawful practices set forth [in the Complaint]."  [*Id.* at Prayer for Relief(C).]

49.     In certain circumstances, where the value of declaratory or injunctive relief is not too speculative, the value can be considered when determining the amount in controversy.  *See Mann v. Unum Life Ins. Co. of Am.*, 505 F. App'x 854, 856 (11th Cir. 2013).  The value of declaratory or injunctive relief is based upon the "value of the object of the litigation."  *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315–16 (11th Cir. 2014) (citation omitted).  Courts in the Eleventh Circuit consider the "value of the object of the litigation" from the plaintiff's perspective, *i.e.*, "the monetary value of the benefit that would flow to the plaintiffs if the relief [they were seeking] were granted."  *Id.* at 1316 (citation omitted).  And under CAFA, courts "aggregate the claims of the individual class members and consider the monetary value that would flow to the entire class if the declaratory [or injunctive] relief were granted."  *Id.*

50.     Here, however, no allegations in the Complaint allow Defendant to calculate the amount of Plaintiffs' injunctive relief demand, and, therefore, TGH has not included that value in the calculation of the total amount in controversy.  Nevertheless, TGH underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.

## ATTORNEYS' FEES

51.     When underlying substantive law provides for an award of attorneys' fees, a party may include a "reasonable amount" in its calculation in the

amount in controversy. *McLawhorn v. GEICO Indem. Co.*, Case No. 8:17–cv–156–T–33AEP, 2017 WL 1277744, at *5 (M.D. Fla. Apr. 6, 2017) (citing *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000)).   Here, Plaintiffs' FDUTPA claim provides for the award of attorneys' fees to the prevailing party, and such fees are available under FDUTPA in calculating the amount in controversy. *See Reilly v. Amy's Kitchen, Inc.*, 2 F. Supp. 3d 1300, 1305 (S.D. Fla. 2014) ("[T]he Court may consider attorney's fees and costs available under FDUTPA in calculating the amount in controversy[.]") (citing *McKinnon Motors, LLC*, 329 F.3d at 808 n. 5).

52.      Although only "attorneys' fees incurred up to the time of removal may be included in the amount in controversy" calculation, *McLawhorn*, 2017 WL 1277744, at *5, TGH underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.

## NOTICE

53.      As required by 28 U.S.C. § 1446(d), TGH is providing written notice of the filing of this Notice of Removal to Plaintiffs and is filing a copy of this Notice of Removal with the Clerk of the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.

WHEREFORE, Defendant Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital removes the State Court Action from the Thirteenth Judicial Circuit

in and for Hillsborough County, Florida to U.S. District Court for the Middle District of Florida.

Respectfully submitted,

DATED:  September 5, 2023

**BAKER & HOSTETLER LLP**

By: */s/ Julie Singer Brady*

    Julie Singer Brady
    Florida Bar No. 389315
    Email:   *jsingerbrady@bakerlaw.com*
    Secondary email:  *mrios@bakerlaw.com*
    200 South Orange Avenue, Suite 2300
    Orlando, FL 32801
    Telephone: 407.649.4000
    Facsimile: 407.841.0168

    Casie D. Collignon (*pro hac vice forthcoming*)
    Sarah A. Ballard (*pro hac vice forthcoming*)
    1801 California Street, Suite 4400
    Denver, CO 80202
    Telephone: 303.861.0600
    Facsimile: 303.861.7805

    *Attorneys for Defendant Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing **DEFENDANT'S NOTICE OF REMOVAL** was filed and served through the Court's ECF system on this 5th day of September, 2023, on all counsel of record.


*/s/ Julie Singer Brady*
Julie Singer Brady